**EXHIBIT 1**
**1:05CV01986-HHK**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOZELLA D. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:05CV01986-HHK |
| | ) | **Next-Scheduled Court Event:  Status** |
| HARTFORD INSURANCE COMPANY | ) | **Conference on December 15, 2006** |
| | ) | |
| and | ) | |
| | ) | **UNDER SEAL** |
| PAS FINANCIAL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### FIRST AMENDED ANSWER AND COUNTERCLAIM OF
### HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

Hartford Life and Accident Insurance Company ("Hartford") (erroneously

referred to in the Complaint as "Hartford Insurance Company"), by counsel, for its First

Amended Answer to the Complaint adopts and incorporates by reference its defenses and

responses to the numbered and unnumbered paragraphs of the Complaint set forth in the Answer

of Hartford Life and Accident Insurance Company, and further states the following as its

Counterclaim for interpleader against Mozella D. Jones; Derrell F. Thompson; T████ J████

(a/k/a T████ T████), an infant; D████ T████, an infant; and M███ T████,

an infant (collectively the "Claimants"):

## COUNTERCLAIM

### INTRODUCTION

1.    Hartford brings this Counterclaim for interpleader pursuant to Rules 13

and 22 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1335 to resolve multiple

inconsistent claims to the proceeds of a group life insurance policy issued by Hartford to the

Trustee of the Hartford Financial and Retail Organizations Trust and insuring the life of the late

Henry Clay Thompson, Jr. Hartford's Counterclaim for interpleader against Mozella D. Jones

arises out of the same insurance policy that is the subject of Mozella D. Jones's declaratory

judgment count in her Complaint. The additional Counterclaim defendants named above have

been added and joined in this action pursuant to Rule 13(h) of the Federal Rules of Civil

Procedure in order to bring all potential claimants of the policy proceeds before the Court.

### PARTIES, JURISDICTION, AND VENUE

2.    Hartford is a Connecticut corporation with its principal place of business

in Simsbury, Connecticut.

3.    Upon information and belief, Mozella D. Jones ("Mozella Jones") is a

citizen of the District of Columbia who resides in the District of Columbia. Upon information

and belief, Mozella Jones was at one time the fiancé of the late Henry Clay Thompson, Jr.

("Henry Thompson"). Upon information and belief, Henry Thompson and Mozella Jones never

married.

4.    Upon information and belief, Derrell F. Thompson ("Derrell Thompson")

is a citizen of the State of New York, who resides in Bronx, New York. Derrell Thompson is the

son of the late Henry Thompson.

5.    Upon information and belief, T██████ J████ (a/k/a T██████ T████████)

(hereinafter referred to as "T██████ J████") is a citizen of the District of Columbia, who resides

in the District of Columbia. Upon information and belief, T██████ J████ is a minor child and is

the daughter of the late Henry Thompson.

6. Upon information and belief, D████ T████ is a citizen of the Commonwealth of Virginia, who resides in Virginia. Upon information and belief, D████ T████ is a minor child and is the son of the late Henry Thompson.

7. Upon information and belief, M███ T████ is a citizen of the State of Maryland who resides in Silver Spring, Maryland. Upon information and belief, M███ T████ is a minor child and is the daughter of the late Henry Thompson.

8. This Court has jurisdiction pursuant to 28 U.S.C. 1332 and 28 U.S.C. 1335.

9. For purposes of 28 U.S.C. § 1332, the matter in controversy involves the disposition of the proceeds a life insurance policy, the value of which exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states, as Hartford is a citizen of the State of Connecticut and the Claimants all are citizens of either the Commonwealth of Virginia, the State of New York, the State of Maryland, or the District of Columbia.

10. For purposes of 28 U.S.C. § 1335, two or more adverse claimants are of diverse citizenship, as Mozella Jones is a citizen of the District of Columbia, Derrell Thompson is a citizen of the State of New York, M███ T████ is a citizen of the State of Maryland and D████ T████ is a citizen of the Commonwealth of Virginia. This is an interpleader action, and Claimants assert or may assert conflicting claims to proceeds of an insurance policy issued by Hartford having a value in excess of $500. Hartford will tender forthwith a check in the amount of the disputed proceeds of the policy at issue for deposit into the registry of the Court.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1397 because two of the claimants, Mozella Jones and T███ J███ reside in the District of Columbia, which lies within this District.  In addition, venue is also proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this District, insofar as Henry Thompson's death, which has precipitated the claims under the policy at issue in this case, occurred in the District of Columbia, and as Mozella Jones has brought her action against Hartford for a declaration of her rights under the policy in this District.

### FACTS

12.    Henry Thompson was covered under a group life insurance policy issued by Hartford to the Trustee of the Hartford Financial and Retail Organizations Trust and identified as policy number AGL-1705 ("the Policy").  The Policy replaced a prior policy issued by Provident Life & Accident Insurance Company, identified as policy number P104-1855, under which Henry Thompson had been covered.  The Policy provided $100,000 in insurance coverage on the life of Henry Thompson.  A copy of the Policy and a redacted copy of the Certificate of Insurance are attached as **Exhibits A** and **B** respectively.

13.    Upon information and belief, Henry Thompson died, unmarried, on or about August 3, 2005.  As a result, the proceeds of his life insurance under the Policy are payable to the appropriate person or persons pursuant to the terms of the Policy.

14.    Under the Policy, the life insurance proceeds are payable according to the beneficiary designation, if any, in effect on the date of the insured's death.

15.    In the event that no beneficiary designation has been made, the Policy provides that benefits will be paid as follows on the insured's death:  (1) to the insured's spouse, if living, otherwise, (2) in equal shares to the then living children of the insured, if any,

4

otherwise, (3) in equal shares to the parents of the insured, if living, otherwise, (4) in equal shares to the brothers and sisters of the insured, if living, otherwise, (5) to the estate of the insured.

16.    On or about August 27, 2005, Mozella Jones completed and submitted a proof of death claim form to Hartford claiming benefits under the Policy as its designated beneficiary. A redacted copy of Mozella Jones' claim form is attached as **Exhibit C**.

17.    Also on or about August 27, 2005, Mozella Jones executed and submitted a Preference Beneficiary's Affidavit, indicating that she was the surviving spouse of the late Henry Clay Thompson. The Preference Beneficiary's Affidavit states that it is "to be used whenever no beneficiary was designated or no designated beneficiary survived the deceased" and states that the affidavit is to be "completed only by the person or one of the persons within the first surviving class of the following classes of successive preference beneficiaries of the deceased: (1) widow or widower; (2) children; (3) parents; (4) brothers or sisters; (5) executor or administrator." A redacted copy of Mozella Jones' Preference Beneficiary's Affidavit is attached as **Exhibit D**.

18.    Hartford has been unable to locate any cards or other documentation naming a beneficiary of Henry Thompson's life insurance under the Policy.   Such documentation is maintained by third party administrators.

19.    Hartford has continued its investigation to determine the existence of an appropriate recipient of the insurance proceeds pursuant to the terms of the Policy. In that regard, Vivian Thompson, the late Henry Thompson's mother, in October 2005, executed a Preference Beneficiary Affidavit, listing herself as to the mother of Henry Thompson, and listing Derrell Thompson, T████ J███ (referred to on the form as T████ T██████), D█████

T█████, and M███ T███████ as Henry Thompson's children. A redacted copy of Vivian

Thompson's Preference Beneficiary Affidavit is attached hereto as **Exhibit E**.

20.    Throughout Hartford's investigation, Mozella Jones has maintained her

position that she was the designated beneficiary of Henry Thompson's life insurance at the time

the Policy was issued and remained the beneficiary at the time of Henry Thompson's death.

Mozella Jones has also, through the instant lawsuit, requested this Court to declare that she is the

rightful beneficiary of the Policy proceeds.

21.    If Mozella Jones was the named beneficiary under the Policy at the time of

Henry Thompson's death, then she may be entitled to the proceeds of the Policy. If Henry

Thompson did not have a designated beneficiary under the Policy at the time of his death, then

the children of Henry Thompson named herein may be entitled to the proceeds of the Policy.

22.    Hartford is a disinterested stakeholder holding the disputed proceeds of the

Policy.

23.    Competing claims exist for the proceeds of the Policy such that Hartford is

or may be exposed to double or multiple liability, for the Claimants all claim or may claim to be

entitled to the proceeds of the Policy.

### COUNT I – INTERPLEADER OF CLAIMS

24.    The allegations of paragraphs 1 through 23 are hereby realleged and

incorporated herein.

25.    Hartford is a disinterested stakeholder of the disputed proceeds of the

Policy and has at all times acted in good faith with respect to those proceeds and the claimants

thereto. Hartford is or may be exposed to double or multiple liability because Mozella Jones,

Derrell Thompson, T█████ J████, D███████ T███████, and M███ T███████ all claim or

6

may claim to be entitled to the proceeds of the Policy, adverse to, and independent of, one another.

26.     Derrell Thompson, T███J███, D███████T███████, and M███████ T██████ are all properly joined together with Mozella Jones as Defendants to this Counterclaim because, in their absence, complete relief cannot be accorded among those already parties and because, if they are not so joined, Hartford would be subject to a substantial risk of incurring double or multiple obligations by reason of their claims or potential claims, and the interpleader relief sought by Hartford against all of them arises out of the same life insurance policy to which they have made or may make claims as a result of the death of Henry Thompson. Furthermore, questions of law and fact common to all Defendants to the Counterclaim will arise in this interpleader action in the course of the Court's determination of the proper beneficiary or beneficiaries of the proceeds of the Policy.

27.     Hartford will tender forthwith for deposit into the Registry of the Court a check in the amount of $100,000.00, which represents the face value of the disputed proceeds of the Policy.

### REQUEST FOR RELIEF

WHEREFORE, pursuant to Count I of this Counterclaim, Hartford requests that the Court enter an Order:

(a)     Appointing a guardian or guardians *ad litem* for the minor children defendants, T███J███, M███T███████, and D███████T███████ or otherwise protecting their interests in this action, to the extent the Court deems necessary;

(b)     Enjoining, preliminarily and permanently, Mozella Jones, Derrell Thompson, T███J███, M███T███████, and/or D███████T███████ from instituting or

prosecuting any other action, suit, or proceeding against Hartford in any state or United States court relating to the Policy;

(c)    Requiring the Claimants to interplead their claims to the proceeds of the Policy;

(d)    Dismissing Hartford from this suit and forever discharging it from any and all liability to Mozella Jones, Derrell Thompson, T███ J███ M███ T███████, and/or D█████ T██████ as well as their heirs, descendants, successors, and assigns, and/or anyone claiming through them, for any claim, demand, action or cause of action arising out of or in any way connected with the Policy;

(e)    Awarding Hartford its costs and attorney fees incurred in this proceeding; and

(f)    Awarding Hartford such additional or alternative relief as this Court deems proper.

HARTFORD LIFE & ACCIDENT INSURANCE COMPANY


By _____/s/ Mary C. Zinsner_____
       Of Counsel

Mary C. Zinsner, DC Bar No. 430091
Troutman Sanders LLP
1660 International Drive, Suite 600
McLean, VA 22102
(703) 734-4334
FAX (703) 734-4340
mary.zinsner@troutmansanders.com

David E. Constine, III, VA State Bar No. 23223
Andrew P. Sherrod, VA State Bar No. 45854 (admitted *pro hac vice*)
Troutman Sanders LLP
1001 Haxall Point
Richmond, Virginia  23219
(804) 697-1200
FAX (804) 697-1339
david.constine@troutmansanders.com
andrew.sherrod@troutmansanders.com

Counsel for Hartford Life & Accident Insurance Company

#1431352.3 (Sealed)

January 30, 2006

I certify that to the best of my knowledge in the capacity as an account manager that this is a true, correct, and complete copy of policy AGL-1705 issued to the Trustee of the Hartford Financial and Retail Organizations Trust, by Hartford Life and Accident Insurance Company. This policy reflects the policy as issued as of August 3, 2005.

Signed:     *Marcia Gardiner*
            Marcia Gardiner

Title:      Account Manager

Company:    Hartford Life Insurance Company

Date:       January 30, 2006



**THE HARTFORD**

**TERM LIFE INSURANCE**

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
**Simsbury, Connecticut**

(A stock insurance company, herein called the Company)
Will pay benefits according to the conditions of this Policy.

Signed for the Company

Richard G. Costello, *Secretary*          Thomas M. Marra, *President*

| | |
|---|---|
| **Policyholder Name:** | Trustee of the Hartford Financial and Retail Organizations Trust |
| **Policyholder Address:** | 1 Bank One Plaza<br>Chicago, Illinois 60670 |
| **Place of Delivery:** | Chicago, Illinois |
| **Policy Number:** | AGL-1705 |
| **Participating Organization** | Bank of America |
| **Policy Effective Date:** | March 1, 2005 |
| **Policy Anniversary:** | March 1 of each year beginning 2006 |

**TABLE OF CONTENTS**
Schedule
Policy Modifications
Participating Organizations
Contract Provisions
Incorporation Provision
Certificate of Insurance
Riders (if any)

Countersigned by                                    Accepted by

...................................................    ...................................................
Licensed Resident Agent                              Policyholder

Form SRP-1153 A (HLA) (1705)
Printed in U.S.A.

## SCHEDULE – ELIGIBILITY

**Eligible Persons:**
DESCRIPTION OF ELIGIBLE PERSONS

Class 1:
All Prior Insured Persons, who were enrolled under the Prior Policy's Basic Term Coverage, provided he or she is under the Policy Age Limit.

Class 2:
All Prior Covered Persons, who were enrolled under the Prior Policy's Level Term Life Insurance, provided he or she is under the Policy Age Limit.

**Prior Covered Person** means a person who, on February 28, 2005 was a Covered Person under Prior Policy.

**Prior Policy** means Policy Number P104-1855 (TX) issued to the Financial Services Trust, Bank of America of Texas, N.A. by Provident Life and Accident Insurance Company; or Policy Number P104-1855 (TN) issued to Financial Services Trust, Bank of America of Tennessee, N.A. by Provident Life and Accident Insurance Company

**Eligible Dependents:**
DESCRIPTION OF ELIGIBLE SPOUSE
An Eligible Person's spouse who:
a)    is under age 70; and
b)    resides in the United States; and
c)    is not legally separated or divorced from the Eligible Person.

DESCRIPTION OF ELIGIBLE CHILD
An Eligible Person's unmarried child, stepchild, legally adopted child or foster child who is primarily dependent on the Eligible Person for support and maintenance and who:
a)    is at least 14 days old but under age 19; or
b)    is under age 23 and is a full-time student in an accredited college, university, vocational or technical school;  and

**Policy Age Limit:**    75 years of age

**Eligibility Restrictions:**
When a husband and wife are both Eligible Persons:
a)    coverage may not be duplicated by applying as dependents of each other; and
b)    coverage for an Eligible Dependent Child may be requested by either the wife or the husband, but not both.

**Evidence of Insurability:**
To be accepted for coverage under this Policy, or any increases in coverage under this Policy, all Eligible Persons and Dependents must submit a Written Application and evidence of insurability satisfactory to us.

**SCHEDULE – BENEFITS AND AMOUNTS**

The Covered Person's Amount of Insurance will be as elected from this Schedule.  The election must be in accordance with the Eligibility Provisions and all other terms of this Policy.  The Amount of Insurance cannot be more than the amount across from the Covered Person's age at the time of election.

### Class 1 - Basic Term Coverage

| INSURED PERSON'S AGE | MAXIMUM AMOUNT OF INSURANCE |
|---|---|
| 18-64 | $1,000 |
| 65-69 | $ 750 |
| 70* | $ 500 |

The Basic Term Coverage is provided by Your financial institution, or its authorized agent, for one year only.  There is no cost to you.  This coverage will terminate at the end of one year from the date it became effective.  Your amount of coverage will be the amount shown above for Your attained age on the date of death.

*Applicable only to the Insured Persons who enroll for the Basic Benefit after attainment of age 69, but prior to attainment of age 70.  The coverage for any such Insured Person will terminate at the end of one year from the date it became effective.

### Class 2 – Level Term Coverage

|  | LIFE BENEFIT AMOUNT |
|---|---|
| Insured Person | $10,000 to a maximum of $100,000 in increments of $10,000. |
| Spouse | $10,000 to a maximum of $100,000 in increments of $10,000. |
| Child(ren) |  |
| 14 days to 6 months | $500 |
| 6 months to 19 years* | $5,000 |

*Coverage to 23 if full-time student at an accredited school or college and primarily dependent upon you for support and maintenance.

Form SRP-1153 C (1705)                                          3

## SCHEDULE - PREMIUMS

**Individual Premiums:** Premiums for each Covered Person are on file at the offices of the Policyholder.

Premiums are based on:
a) the Covered Person's gender and status as a Smoker or non-smoker;
b) the Covered Person's age on his or her effective date and on each Premium Due Date thereafter; and
c) the Covered Person's Plan and Amount of Insurance.

*Premiums are mutually agreed upon by the Policyholder and Us.*

**Individual Premium Due Dates:** The first premium for each person is due on the date he or she becomes covered under this Policy. Each premium after that is due at the end of the period for which his or her preceding premium was paid.

**Policy Premium:** The premium for this Policy is the sum of the Individual Premiums for each Covered Person.

**Policy Premium Due Dates:** The Policy Premium is payable on:
a) the Policy Effective Date; and
b) a periodic payment basis mutually agreed upon by the Policyholder and Us.

This Policy terminates on the last day of the period for which premium is paid.

**Policy Payment:** The Policy Premiums are to be paid to us by the Policyholder. However, they may be paid to us by any other person according to a mutual agreement among the other person, the Policyholder and us.

**Change of Premiums:** We have the right to change the premium rate on the first anniversary of this Policy and on any Premium Due Date thereafter. This includes the right to change premium rates for a benefit based on a Policy rate change that applies to all individuals of the same class, status as a Smoker or non-smoker, sex, and age.

We will give the Policyholder notice of any change at least 91 days before the Premium Due Date on which it is to become effective.

Form SRP-1153 E (1705)                4

## PARTICIPATING ORGANIZATIONS

**The Policyholder** means the Trustee of the Hartford Financial and Retail Organizations Trust.

**Participating Organization** means any organization that has become a Participant of the Trustee of the Hartford Financial and Retail Organizations Trust.

We or the Policyholder (by written request), may add to or delete from the list of Participating Organizations in this Policy at any time.

Any change we agree to will become effective on a date which is mutually agreeable to the Policyholder and us.

The Policyholder will act for and on behalf of each Participating Organization in all matters concerning this Policy.

Every:
    a)   act of the Policyholder;
    b)   agreement made between the Policyholder and us;
    c)   notice given by us to, or to us by, the Policyholder;
is binding on each Participating Organization.

Each reference in this Policy to a relationship between the Policyholder and its Eligible Persons includes the same relationship between each Participating Organization and its Eligible Persons, except where this Policy describes specific differences.

**Individual Effective Date:** A person associated with a Participating Organization will not:
    a)   become an Eligible Person before the Organization qualifies; or
    b)   continue as an Eligible Person after the Organization ceases to qualify as a Participating Organization.

**Premiums:** A Participating Organization's premiums will be calculated based on:
    a)   the coverage requested; and
    b)   the data given to us by the Organization.

**Data Given By Participating Organization:** The Participating Organization, with our approval, may keep the important insurance records on all Covered Persons who are members of the Organization.

The insurance records of the Policyholder and/or the Participating Organization will be open for our inspection at any reasonable time.

The Participating Organization will give us the names of:
    a)   all persons initially eligible;
    b)   all new persons who become eligible; and
    c)   all Covered Persons whose insurance is terminated; and
any data necessary to calculate premiums.

The Participating Organization's failure to:
    a)   give us the name of any Covered Person will not invalidate such person's insurance;
    b)   report a person's termination of insurance will not continue coverage beyond the date of termination.

Upon termination of coverage, any unearned premium will be determined on a pro-rata basis. We will promptly return any unearned premium paid upon the request of the Covered Person.

**Participating Organization Termination Date:** A Participating Organization will cease to be covered on the first to occur of:
    a)   the date the Participating Organization ceases to be a member of the Policyholder;
    b)   the date requested by the Participating Organization but not prior to our receipt of the request; or
    c)   the termination date of this Policy.

Form SRP-1153 F (1705)          5

**PARTICIPATING ORGANIZATIONS (Continued)**

| Name of Participating Organization | Effective Date |
|---|---|
| Bank of America | March 1, 2005 |

## CONTRACT PROVISIONS

**Entire Contract:** The entire contract between the Policyholder and us consists of:
  a) this Policy, and any forms made a part of this Policy at issue; and
  b) any individual application submitted by the Eligible Person and accepted by us in connection with this Policy.

All statements made in the application will be deemed representations and not warranties. No statement will be used to void insurance or deny a claim unless:
  a) it is in writing; and
  b) a copy of it has been given to the person who made it or to his or her beneficiary.

**Changes:** We reserve the right to make changes in this Policy. We will give the Policyholder 90 days advance written notice of any change.

No agent has authority to change or waive any part of this Policy. To be valid, any change or waiver must be in writing, approved by one of our officers and made a part of this Policy.

**Time Periods:** All periods begin and end at 12:01 A.M., Standard Time at the place where this Policy is delivered.

**Certificates:** We will give individual certificates to:
  a) the Policyholder; or
  b) any other person according to a mutual agreement among the other person, the Policyholder, and us;
for delivery to Insured Persons.

The certificates will describe the features of this Policy which are important to Insured Persons.

**30 Day Right to Examine Certificate:** The Insured Person has a 30 day right to examine his or her Certificate. If the Insured Person is not satisfied, he or she may return it to us within 30 days of his or her effective date. In that event, we will consider it void from the certificate effective date and any premium paid will be refunded. Any claims paid under this Policy during the initial 30 day period will be deducted from the refund.

**Data Furnished by Policyholder:** The Policyholder, or any other person designated by the Policyholder, may keep the important insurance records on all Covered Persons. The Policyholder or its designee must give us information, when and in the manner we ask, to administer the insurance provided by this Policy.

The Policyholder will, upon our request, give us:
  a) the names of all persons initially eligible for coverage;
  b) the names of all additional persons who become eligible for coverage;
  c) the names of all persons whose amount of insurance is to be changed;
  d) the names of all persons whose insurance is terminated; and
  e) any data necessary to calculate premiums.

The Policyholder's failure to report a person's termination of insurance does not continue the coverage beyond the date of termination.

The Policyholder's insurance records will be open for our inspection at any reasonable time.

**CONTRACT PROVISIONS (Continued)**

**Clerical Error:** Clerical error (whether by the Policyholder, the Plan Administrator, or us) in keeping the records having to do with this Policy, or delays in making entries on the records, will not void the insurance of any person if that insurance would otherwise have been in effect. Such clerical error will not extend the insurance of any person if that insurance would otherwise have ended or been reduced as provided by this Policy.

When a clerical error is found, premiums and benefits will be adjusted based on the true facts and this Policy.

**Cancellation:** This Policy may be cancelled at any time by written notice mailed or delivered by us to the Policyholder or by the Policyholder to us. If we cancel, we will mail or deliver the notice to the Policyholder at its last address shown in our records.

If we cancel, it becomes effective on the later of:
    a)   the date stated in the notice; or
    b)   the 91st day after we mail or deliver the notice.

If the Policyholder cancels, it becomes effective on the later of:
    a)   the date we receive the notice; or
    b)   the date stated in the notice.

In either event:
    a)   we will promptly return any unearned premium paid; or
    b)   the Policyholder will promptly pay any earned premium which has not been paid.

Any earned or unearned premium will be determined on a pro-rata basis.

**Conformity with State Statutes:** Any provision of this Policy which, on the Policy Effective Date, is in conflict with the statutes of the state in which this Policy is issued on such date is hereby amended to conform to the minimum requirements of such statutes.

## SCHEDULE - POLICY MODIFICATIONS

**Policy Modifications:** This Policy is amended as follows:

For residents of the state of **Nevada:**

Under the **Contract Provisions (Continued)**, the **Cancellation provision** is deleted in its entirety and replaced by the following:

**Cancellation:** This Policy may be canceled on any Policy Anniversary Date by written notice mailed or delivered by us to the Policyholder or by the Policyholder to us. If we cancel, we will mail or deliver the notice to the Policyholder at least 60 days before the effective date of the cancellation to the last address shown in our records.

If we cancel, it becomes effective on the later of:
a) the date stated in the notice; or
b) the 61st day after we mail or deliver the notice.

If the Policyholder cancels, it becomes effective on the later of:
a) the date we receive the notice; or
b) the date stated in the notice.

In either event:
a) we will promptly return any unearned premium paid; or
b) the Policyholder will promptly pay any earned premium which has not been paid.

Any earned or unearned premium will be determined on a pro rata basis.

For residents of Vermont:

**VERMONT LIFE INSURANCE**

**MANDATORY CIVIL UNION ENDORSEMENT**

**PURPOSE:**
This endorsement is part of the policy, contract, certificate and/or riders and endorsements to which it is attached and is intended to provide benefits for parties to a civil union. Vermont law requires that insurance contracts and policies offered to married persons and their families be made available to parties to a civil union and their families. In order to receive benefits in accordance with this endorsement, the civil union must have been established in the state of Vermont according to Vermont law.

**GENERAL DEFINITIONS, TERMS, CONDITIONS AND PROVISIONS:**
The general definitions, terms, conditions or any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:

Terms that mean or refer to a marital relationship or that may be construed to mean or refer to a marital relationship: such as "marriage", "spouse", "husband", "wife", "dependent", "next of kin", "relative", "beneficiary", "survivor", "immediate family" and any other such terms include the relationship created by a civil union.

Terms that mean or refer to a family relationship arising from a marriage such as "family", "immediate family", "dependent", "children", "next of kin", "relative", "beneficiary", "survivor" and any other such terms include the family relationship created by a civil union.

Terms that mean or refer to the inception or dissolution of a marriage, such as "date of marriage", "divorce decree", "termination of marriage" and any other such terms include the inception or dissolution of a civil union.

Form SRP-1153 D (1705)                                    9

"Dependent" means a spouse, a party to a civil union, and/or a child or children (natural, stepchild, legally adopted or a minor who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union.

"Child or covered child" means a child (natural, step-child, legally adopted or a minor who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union.

<u>CAUTIONARY DISCLOSURE:</u>
**THIS ENDORSEMENT IS ISSUED TO MEET THE REQUIREMENTS OF VERMONT LAW AS EXPLAINED IN THE "PURPOSE" PARAGRAPH OF THE ENDORSEMENT. THE FEDERAL GOVERNMENT OR ANOTHER STATE GOVERNMENT MAY NOT RECOGNIZE THE BENEFITS GRANTED UNDER THIS ENDORSEMENT. YOU ARE ADVISED TO SEEK EXPERT ADVICE TO DETERMINE YOUR RIGHTS UNDER THIS CONTRACT.**



THE
HARTFORD

The Hartford Financial Services Group, Inc is required by law to provide its Privacy Policy to its Policyholders. This notice is provided for your information.

### Privacy Policy and Practices of The Hartford Financial Services Group, Inc. and its Affiliates
(herein called "we, our, and us")

*This Privacy Policy applies to our United States Operations*

We value your trust. We are committed to the responsible:
a) management;
b) use; and
c) protection;
of **Personal Information.**

This notice describes how we collect, disclose, and protect **Personal Information.**

We collect **Personal Information** to:
a) service your **Transactions** with us; and
b) support our business functions.

We may obtain **Personal Information** from:
a) **You;**
b) your **Transactions** with us; and
c) third parties such as a consumer-reporting agency.

Based on the type of product or service **You** apply for or get from us, **Personal Information** such as:
a) your name;
b) your address;
c) your income;
d) your payment; or
e) your credit history;
may be gathered from sources such as applications, **Transactions,** and consumer reports.

To serve **You** and service our business, we may share certain **Personal Information.** We will share **Personal Information,** only as allowed by law, with affiliates such as:
a) our insurance companies;
b) our employee agents;
c) our brokerage firms; and
d) our administrators.

As allowed by law, we may share **Personal Financial Information** with our affiliates to:
a) market our products; or
b) market our services;
to **You** without providing **You** with an option to prevent these disclosures.

We may also share **Personal Information,** only as Allowed by law, with unaffiliated third parties including:
a) independent agents;
b) brokerage firms;
c) insurance companies;
d) administrators; and
e) service providers;
who help us serve **You** and service our business.

When allowed by law, we may share certain **Personal Financial Information** with other unaffiliated third parties who assist us by performing services or functions such as:
a) taking surveys;
b) marketing our products or services; or
c) offering financial products or services under a joint agreement between us and one or more financial institutions.

We will not sell or share your **Personal Financial Information** with anyone for purposes unrelated to our business functions without offering **You** the opportunity to:
a) "opt-out;" or
b) "opt-in;"
as required by law.

We only disclose **Personal Health Information** with:
a) your proper written authorization; or
b) as otherwise allowed or required by law.

Our employees have access to **Personal Information** in the course of doing their jobs, such as:
a) underwriting policies;
b) paying claims;
c) developing new products; or
d) advising customers of our products and services.

We use manual and electronic security procedures to maintain:
a) the confidentiality; and
b) the integrity of;
**Personal Information** that we have. We use these procedures to guard against unauthorized access.

Some techniques we use to protect **Personal Information** include:
a)  secured files;
b)  user authentication;
c)  encryption;
d)  firewall technology; and
e)  the use of detection software.

We are responsible for and must:
a)  identify information to be protected;
b)  provide an adequate level of protection for that data;
c)  grant access to protected data only to those people who must use it in the performance of their job-related duties.

Employees who violate our Privacy Policy will be subject to discipline, which may include ending their employment with us.

At the start of our business relationship, we will give **You** a copy of our current Privacy Policy.

We will also give **You** a copy of our current Privacy Policy once a year if **You** maintain a continuing business relationship with us.

We will continue to follow our Privacy Policy regarding **Personal Information** even when a business relationship no longer exists between us.

*As used in this Privacy Notice:*

*Application* means your request for our product or service.

*Personal Financial Information* means financial information such as:
a)  credit history;
b)  income;
c)  financial benefits; or
d)  policy or claim information.

*Personal Health Information* means health information such as:
a)  your medical records; or
b)  information about your illness, disability or injury.

*Personal Information* means information that identifies **You** personally and is not otherwise available to the public.  It includes:
a)  **Personal Financial Information**; and
b)  **Personal Health Information**.

*Transaction* means your business dealings with us, such as:
a)  your **Application**;
b)  your request for us to pay a claim; and
c)  your request for us to take an action on your account.

*You* means an individual who has given us **Personal Information** in conjunction with:
a)  asking about;
b)  applying for; or
c)  obtaining;
a financial product or service from us if the product or service is used mainly for personal, family, or household purposes.

This Privacy Policy is being provided on behalf of the following affiliates of The Hartford Financial Services Group, Inc.:

American Maturity Life Insurance Company; Capstone Risk Management, LLC; First State Insurance Company; Hart Life Insurance Company; Hartford Accident & Indemnity Company; Hartford Administrative Services Company; Hartford Casualty Insurance Company; Hartford Equity Sales Company, Inc.; Hartford Fire Insurance Company; Hartford HLS Series Fund II, Inc.; Hartford Insurance Company of Illinois; Hartford Insurance Company of the Midwest; Hartford Insurance Company of the Southeast; Hartford International Life Reassurance Corporation; Hartford Investment Financial Services, LLC; Hartford Investment Management Company; Hartford Life & Accident Insurance Company; Hartford Life and Annuity Insurance Company; Hartford Life Insurance Company; Hartford Life Group Insurance Company, Hartford Lloyd's Insurance Company; Hartford Securities Distribution Company, Inc.; Hartford Series Fund, Inc.; Hartford Specialty Company; Hartford Underwriters Insurance Company; Hartford-Comprehensive Employee Benefit Service Company; International Corporate Marketing Group, LLC; New England Insurance Company; Nutmeg Insurance Agency, Inc.; Nutmeg Insurance Company; Nutmeg Life Insurance Company; Omni General Agency, Inc.; Omni Indemnity Company; Omni Insurance Company; P2P Link, LLC; Pacific Insurance Company, Limited; Planco Financial Services, Inc.; Property and Casualty Insurance Company of Hartford; Sentinel Insurance Company, Ltd.; Servus Life Insurance Company; Specialty Risk Services, Inc.; The Hartford Income Shares Fund, Inc.; The Hartford Mutual Funds II, Inc.; The Hartford Mutual Funds, Inc.; Trumbull Insurance Company; Trumbull Services, L.L.C.; Twin City Fire Insurance Company; Woodbury Financial Services, Inc.

Policyholders who have further questions about this Privacy Policy may reach us by calling 1-866-222-4195.

## ILLINOIS
## LIFE AND HEALTH INSURANCE GUARANTY
## ASSOCIATION LAW

Residents of Illinois who purchase health insurance, life insurance and annuities should know that the insurance companies licensed in Illinois to write these types of insurance are members of the Illinois Life and Health Insurance Guaranty Association. The purpose of this Guaranty Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its policy obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the covered claims of policyholders that live in Illinois (and their payees, beneficiaries and assignees) and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however, as noted below.

## ILLINOIS
## LIFE AND HEALTH INSURANCE GUARANTY
## ASSOCIATION

## DISCLAIMER

The Illinois Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE FOR YOUR POLICY. Even if coverage is provided, there are substantial limitations and exclusions. Coverage is generally conditioned on continued residence in Illinois. Other conditions may also preclude coverage.

You should not rely on availability of coverage under the Life and Health Insurance Guaranty Association Law when selecting an insurer. Your insurer and agent are prohibited by law from using the existence of the Association or its coverage to sell you an insurance policy.

The Illinois Life and Health Guaranty Association or the Illinois Department of Insurance will respond to any questions you may have which are not answered in this document. Policyholders with additional questions may contact:

| Illinois Life And Health Insurance Guaranty Association<br>8420 West Bryn Mawr Avenue<br>Chicago, Illinois 60631<br>(773) 714-8050 | Illinois Department Of Insurance<br>320 West Washington Street<br>4th Floor<br>Springfield, Illinois 62767<br>(217) 782-4515 |
|---|---|

## SUMMARY OF GENERAL PURPOSES AND CURRENT LIMITATIONS OF COVERAGE

The Illinois law that provides for this safety-net coverage is called the Illinois Life and Health Insurance Guaranty Association Law ("Law") [215 ILCS 5/531.01, et seq.]. The following contains a brief summary of the Law's coverages, exclusions and limits. This summary does not cover all provisions, nor does it in any way change anyone's rights or obligations under the law or the rights or obligations of this Guaranty Association. If you have obtained this document from an agent in connection with the purchase of a policy, you should be aware that its delivery to you does not guarantee that your policy is covered by the Guaranty Association.

a)    Coverage:
      The Illinois Life and Health Insurance Guaranty Association provides coverage to policyholders that reside in Illinois for insurance issued by members of the Guaranty Association, including:
      1)  life insurance, health insurance and annuity contracts;
      2)  life, health or annuity certificates under direct group policies or contracts;
      3)  unallocated annuity contracts; and
      4)  contracts to furnish health care services and subscription certificates for medical or health care services issued by certain licensed entities. The beneficiaries, payees or assignees of such persons are also protected, even if they live in another state.

(please turn to next page)

b)    **Exclusions from Coverage:**

    1)    The Guaranty Association does **not** provide coverage for:

        A)    any policy or portion of a policy for which the individual has assumed the risk;

        B)    any policy of reinsurance (unless an assumption certificate was issued);

        C)    interest rate guarantees which exceed certain statutory limitations;

        D)    certain unallocated annuity contracts issued to an employee benefit plan protected under the Pension Benefit Guaranty Corporation and any portion of a contract which is not issued to or in connection with a specific employee, union or association of natural persons benefit plan or a government lottery;

        E)    any portion of a variable life insurance or variable annuity contract not guaranteed by an insurer; or

        F)    any stop loss insurance.

    2)    In addition, persons are **not** protected by the Guaranty Association if:

        A)    the Illinois Director of Insurance determines that, in the case of an insurer which is not domiciled in Illinois, the insurer's home state provides substantially similar protection to Illinois residents which will be provided in a timely manner; or

        B)    their policy was issued by an organization which is not a member insurer of the Association.

c)    **Limits on Amount of Coverage:**

    1)    The Law also limits the amount the Illinois Life and Health Insurance Guaranty Association is obligated to pay.  The Guaranty Association's liability is limited to the lesser of either:

        A)    the contractual obligations for which the insurer is liable or for which the insurer would have been liable if it were not an impaired or insolvent insurer; or

        B)    with respect to any one life, regardless of the number of policies, contracts or certificates:

            i)    in the case of life insurance, $300,000 in death benefits but not more than $100,000 in net cash surrender or withdrawal values; and

            ii)    in the case of health insurance, $300,000 in health insurance benefits, including net cash surrender or withdrawal values; and

            iii)    with respect to annuities, $100,000 in the present value of annuity benefits, including net cash surrender or withdrawal values and $100,000 in the present value of annuity benefits for individuals participating in certain government retirement plans covered by an unallocated annuity contract. The limit for coverage of unallocated annuity contracts other than those issued to certain governmental retirement plans is $5,000,000 in benefits per policyholder, regardless of the number of contracts.

    2)    However, in no event is the Guaranty Association liable for more than $300,000 with respect to any one individual.

## INCORPORATION PROVISION

The Certificate(s) of Insurance and Riders listed below are attached to, incorporated in and made a part of, this Policy.

| Certificate of Insurance | Applicable to: | Effective Date of Incorporation |
|---|---|---|
| SRP-1153 CRT A (HLA) (1705) | All Eligible Persons | March 1, 2005 |

| Riders | Applicable to: | Effective Date of Incorporation |
|---|---|---|
| Form PA-3057 (LIF) (HLA) (1705)  Amendatory Certificate Rider | All Eligible Persons residing in the states included on the rider | March 1, 2005 |
| Form PA-8794 (HLA) (1705)  Transition Rider | All Prior Covered Persons | March 1, 2005 |

The provisions listed below are shown in the Certificate(s) of Insurance and are hereby incorporated into and made a part of this Policy.

Definitions
Period of Coverage
Benefits
Exclusions and Limitations
Claim Provisions
Riders (if any)

Form SRP-1153 INC (HLA) (1705)
Printed in U.S.A.

TERM LIFE INSURANCE
CERTIFICATE OF INSURANCE
HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
Simsbury, Connecticut

THE
HARTFORD

**Policy Number:  AGL-1705**
**Policyholder:  Trustee of the Hartford Financial and Retail Organizations Trust**
**Participating Organization:  Bank of America**

We have issued a Policy to the Policyholder.  Our name, the Policyholder's name and the Policy Number are shown above.  The provisions of the Policy which are important to you are summarized in this certificate, consisting of this form, the Schedule with the most recent effective date, and any additional forms which have been made a part of this certificate.  The Policy alone is the only contract under which payment will be made.  Any difference between the Policy and this certificate will be settled according to the provisions of the Policy.  The Policy may be inspected at the office of the Policyholder.

Richard G. Costello, *Secretary*

Thomas M. Marra, *President*

---

### LEVEL TERM COVERAGE
### READ YOUR CERTIFICATE CAREFULLY

YOU HAVE A 30 DAY RIGHT TO EXAMINE YOUR CERTIFICATE.  IF YOU ARE NOT SATISFIED, YOU MAY RETURN IT TO US WITHIN 30 DAYS OF YOUR EFFECTIVE DATE.  IN THAT EVENT, WE WILL CONSIDER IT VOID FROM THE CERTIFICATE EFFECTIVE DATE AND ANY PREMIUM PAID WILL BE REFUNDED.  ANY CLAIMS PAID UNDER THE POLICY DURING THE INITIAL 30 DAY PERIOD WILL BE DEDUCTED FROM THE REFUND.

SEQUENCE OF CONTENTS:  Definitions, Insured Person's Period of Coverage, Dependent's Period of Coverage, Life Insurance Benefit, Conversion Privilege, General Provisions, Riders (if any) and Notices

---

**DEFINITIONS:  Eligible Child or Children** means your unmarried child, stepchild, legally adopted child or foster child who is primarily dependent upon you for support and maintenance and is: a) at least 14 days old but under age 19; or b) under age 23 and is a full time student in an accredited college, university, vocational or technical school.  **Covered Person** means you or your Eligible Dependent while covered under the Policy.  **Smoker** means you or your Eligible Dependent who has smoked cigarettes, cigars or used a pipe or chewing tobacco, nicotine chewing gum or snuff during the 12 months prior to the date application for coverage was made.  **Spouse** means your spouse who is: a) under the limiting age of the Policy stated in the Schedule; and b) not legally separated or divorced from you.  **We, us and our** means the insurance company named on the face page.  **Written Application** means any form provided by Us to apply for coverage.  **You, Your or Insured Person** means the Insured Person named in the Schedule.

**INSURED PERSON'S PERIOD OF COVERAGE:  Effective Date:**  You will become covered under the Policy on the Certificate Effective Date shown on the Schedule subject to payment of the required premium.  **Request for Change:**  If you give us a Written Application for a change in coverage for which you are eligible and pay the required premium, the change will become effective on the first day of the month on or next following the later of:  a) the date we receive the Written Application; or b) if evidence of insurability is required, the date we determine that you are insurable.  **Termination:**  Coverage will terminate on the earliest to occur of:  a) the date the Policy is cancelled; or b) the Premium Due Date next following the date you attain the Policy Age Limit shown in the Schedule; or c) the Premium Due Date next following the date the Participating Organization ceases to participate; or d) the Premium Due Date you fail to pay any required premium, subject to the Grace Period.  **Grace Period:**  No Grace Period is allowed for the first premium which is due on the Policy Effective Date.  A Grace Period of 31 days is allowed for payment of each premium due after the first premium.  We will continue your insurance during the Grace Period.  **Reinstatement:**  If your coverage terminates after the expiration of the Individual Grace Period, you may reinstate your coverage by sending a Written Request for reinstatement to us within 90 days after the date of the first unpaid premium.  Such reinstatement is subject to: a) your payment of all overdue premium; and b) your submission of evidence of insurability that is satisfactory to us.

**DEPENDENT'S PERIOD OF COVERAGE:  Effective Date:**  Your Eligible Dependent will become covered under the Policy on the Effective Date of the Schedule that first shows coverage for him or her, subject to payment of the required premium.  Coverage is indicated for your dependent by an Amount of Insurance shown across from the word "SPOUSE" or "EACH CHILD."  **Request for Change in Coverage:**  If you give us a Written Application for a change in coverage for which your Dependent is eligible and pay the required premium, the change will become effective on the first day of the month on or next following the later of:  a) the date we receive the Written Application; or b) if evidence of insurability is required, the date we determine that he or she is insurable.  **Termination:**  Coverage of a Covered Dependent terminates on the earliest to occur of:  a) the date the Policy is cancelled; or b) the Premium Due Date he or she: 1) in the case of a Covered Spouse, is legally separated or divorced from you; 2) in the case of a Covered Child, no longer qualifies as an Eligible Child as defined; 3) attains the Policy Age Limit shown in the Schedule; or b) the Premium Due Date the required premium is not made, subject to the Grace Period provision; or c) the date your coverage terminates.  However, if dependent's coverage would terminate because of your death, coverage will continue until the Premium Due Date on or next following your death.

Form SRP-1153 CRT A (1705) - 13735
Printed in U.S.A.

**LIFE INSURANCE BENEFIT:** If a Covered Person dies while insured under the Policy, we will pay a Life Insurance Benefit after we receive proof of death. The Life Insurance Benefit will be paid according to the Beneficiary Designation provision of the Policy. The Amount of Life Insurance that applies to each Covered Person is stated in the Schedule. **Suicide:** If a Covered Person commits suicide: a) while sane or insane; b) during his or her first two years of coverage under the Policy; we will only pay an amount equal to the premium paid for coverage to the date of death. The Life Insurance Benefit is payable if a Covered Person is insured under the Policy and commits suicide after the two year period. **Exclusions:** The two year suicide exclusion, stated above, will also apply if a Covered Person commits suicide during the two years immediately following an increase in coverage under the Policy. In that event, the Amount of Insurance payable will equal the Amount of Insurance in force prior to the increase plus an amount equal to the premium paid for the increase to the date of death.

**CONVERSION PRIVILEGE:** If a Covered Person ceases to be insured under the Policy for any reason except: a) termination of the Policy; b) termination of a class of persons under the Policy; or c) voluntary non-payment of premium; the Covered Person will have the right to request an individual conversion policy from the Insurer without giving medical evidence of insurability. Insurer, as used on this page, means us or another insurance company which has agreed with us to issue conversion policies according to this conversion privilege. The Covered Person must: a) give the Insurer a written application for the conversion policy; and b) pay the Insurer the initial premium; within 31 days after he or she ceases to be covered under the Policy. The Conversion Policy: a) will have the provisions, limitations and exclusions on the form the Insurer is issuing for this purpose at the time of conversion; b) will not provide any benefit other than the Life Insurance Benefit; c) will not exceed the Covered Person's Life Insurance Benefit under the Policy; d) will base premiums on the Insurer's rates in effect for new applicants of the Covered Person's class and age at the time of conversion; e) will not be term insurance unless the Covered Person requests a single premium term insurance policy for a period of 1 year preceding the issuance of the conversion policy. If the Covered Person ceases to be covered under the Policy because of: a) termination of the Policy; or b) termination of a class of persons under the Policy; then, provided that the Covered Person has been insured under the plan for five years or more, he or she has the same conversion privilege as shown above except for the amount for which he or she may convert. The Life Insurance Benefit under this circumstance will not exceed the lesser of: a) the Life Insurance Benefit under the Policy less any amount of life insurance he or she may become eligible for under any group insurance policy issued or reinstated by us or by any other Insurer within 31 days of termination, or b) $10,000.00. Any individual policy issued to the Covered Person under the Conversion Privilege becomes effective 31 days from the date of termination and will be in lieu of all other benefits under the Policy. If: a) coverage under the Policy terminates; and b) the Covered Person dies within 31 days of the termination; we will pay the Life Insurance Benefit the Covered Person would have had the right to apply for under this Conversion Privilege. If the Conversion Policy has already taken effect, no Life Insurance Benefit will be payable under the Policy.

**GENERAL PROVISIONS: Beneficiary Designation:** The benefits payable at your death will be paid according to the beneficiary designation, if any, in effect at the time of your death. All benefits over $20,000 will be paid into a checking account which will be owned by the beneficiary or beneficiaries named in writing by you. The beneficiary may elect a lump sum payment by writing a check for the full amount in the checking account. If no beneficiary designation has been made, the benefits payable at your death will be paid to the survivors, in equal shares, in the first of the following classes to have a survivor at your death: 1) spouse; 2) children; 3) parents; 4) brothers and sisters. If there is no survivor in these classes, payment will be made to your estate. However, a checking account will not be established for a benefit payable to your estate or for an Amount of Insurance of less than $20,000. If any beneficiary is a minor, his or her share may be paid, until a legal guardian is appointed, to a person who at our option and in our opinion is caring for and supporting the child. Payment will be made as follows: 1) $100.00 at your death; and 2) monthly installments of not more than $50.00. Payment to any person as stated above will release us from all further liability to the extent of our payment. The Life Insurance Benefit payable at your Covered Dependent's death will not be paid into a checking account, but will be paid to you, if living. Otherwise, it will be paid to the executor or administrator of your estate, or at our option, to your surviving spouse. **Change of Beneficiary:** You may change your designation of beneficiary by filing written notice with us on any form satisfactory to us. Whether you are living or not, the change will relate back and take effect as of the date you signed the written notice. We are not liable for payment of benefits made before receiving written notice. **Misstated Age:** If the age of the Covered Person has been incorrectly stated, the premium rates will be adjusted to the correct age of the person. If the change in age affects the Covered Person's benefits, the benefits will be corrected accordingly and the premium adjustment will take this correction into account. **Smoker's Statement:** If a Covered Person misstates his or her status as a non-smoker, an adjustment in premium will be made to reflect a smoker's rate. If a Covered Person has misstated his or her status as a non-smoker and he or she dies, the Life Insurance Benefit will be reduced to the amount of insurance which the premium would have purchased had the Covered Person correctly stated his or her status. **Incontestability:** Except for non-payment of premiums, the Life Insurance Benefit of the Policy cannot be contested after two years from its effective date. No statement made by you relating to your insurability will be used to contest the insurance for which the statement was made after the insurance has been in force for two years during your lifetime. In order to be used the statement must be in writing and signed by you. No statement made relating to your Dependents being insurable will be used to contest the insurance for which the statement was made after the insurance has been in force for two years during the dependent's lifetime. **Assignment:** We will recognize any assignment made under the Policy, provided: a) it is duly executed; and b) a copy is on file with us. We and the Policyholder assume no responsibility for the validity or effect of an assignment. **Optional Method of Settlement:** You may elect by written request that your Life Insurance Benefit or part of it be paid in equal installments for a specified number of years as shown below. Your beneficiary may also choose this option. First payment will be made when proof of death is received. No installment will be less than $20.00 under any option chosen.

Number of Years During Which Amount of Each Installment for Each $1,000.00 of the Payments Will Be Made Amount of Insurance

| | Annual | Monthly |
|---|---|---|
| 1 | $1,000.00 | $84.28 |
| 2 | 506.18 | 42.66 |
| 3 | 341.60 | 28.79 |
| 4 | 259.34 | 21.86 |
| 5 | 210.00 | 17.70 |
| 10 | 111.47 | 9.39 |
| 15 | 78.80 | 6.64 |
| 20 | 62.58 | 5.27 |

In addition to each installment after the first, the payee will receive interest. The rate of interest per year will be:  a) at least 2 1/2%; and b) any amount over 2 1/2% which we declare for that year on funds remaining with us.  If any installments are left unpaid when the payee last entitled to receive them dies, we will:  a) calculate the sum of the remaining installments; then b) compute the sum at 2 1/2% per year; then c) pay the resulting amount to the executors or the administrators of the payee's estate.  If you or your beneficiary request this option, We will make the periodic payments and no checking account will be established.  If the payee is a corporation, partnership, association, assignee or trustee, this option will be available only with our consent.  Provision may be made for payment of your Life Insurance Benefit under any reasonable arrangement mutually agreed upon. **Facility of Payment:** At our option, we may pay a portion of your Life Insurance Benefit up to $500 to any person equitably entitled to payment because of expenses from your burial.  Our payment will release us from any further liability for such expenses.  (For residents Texas, The Facility of Payment section is deleted and replaced by the following: Facility of Payment:  At our option, we may pay a portion of your Life Insurance Benefit up to $250 to any person equitably entitled to payment because of expenses from your burial.  Our payment will release us from any further liability to the extent of such expenses.) **Autopsy:**  While a claim is pending, we have the right at our expense to make an autopsy where it is not forbidden by law.

**IMPORTANT NOTICES: For residents of All States:** The Hartford Life Insurance Company has contracted with an independent Third Party Administrator, A.G.I.A., INC. under a Policy issued to Trustee of the Hartford Financial and Retail Organizations Trust. The insurance carrier for the Policy is: Hartford Life Insurance Company, 200 Hopmeadow Street, Simsbury, Connecticut 06089. The Administrator for the Policy is: A.G.I.A., INC., 1155 Eugenia Place, Carpinteria, CA 93013-2062, 805-566-9191.

**For Residents of Arkansas: IMPORTANT NOTICE:** ARKANSAS INSURED'S ACCESS TO INSURER INFORMATION: This notice is to comply with Arkansas House Bill 1221. We are required by law to notify you of the complete addresses and phone numbers of the Arkansas Insurance Department, the insurance company's servicing office, and the agent. Below is this information: Arkansas Insurance Department, Consumer Services Division, 400 University Tower Building, Little Rock, Arkansas 72204, Telephone: 1-800-852-5494. Servicing Office: Hartford Life Insurance Company, Special Risk Life and Health Department, P.O. Box 2250, Alpharetta, GA 30023  Telephone: (770) 753-0085. If you have any questions, contact your Hartford agent. **For Residents of California:** CALIFORNIA COMPLAINT NOTICE: WHENEVER THE HARTFORD OR ITS AGENT HAS BEEN UNABLE TO RESOLVE A CONSUMER COMPLAINT AFFECTING THE POLICY OR CERTIFICATE, THE STATE AGENCY LISTED BELOW MAY BE CONTACTED TO ASSIST THE COMPLAINANT IN PURSUING A RESOLUTION OF THE COMPLAINT: CALIFORNIA DEPARTMENT OF INSURANCE, CONSUMER SERVICES DIVISION, 300 SOUTH SPRING STREET, LOS ANGELES, CA 90013 TOLL FREE TELEPHONE: 1-(800) 927-4357 **For Residents of Florida:** NOTICE: The benefits of the policy providing your coverage are governed by the laws of a state other than Florida. **For Residents of Illinois: IMPORTANT NOTICE:** If you want answers to your questions about insurance or if you want to change your insurance, we suggest that you see your agent or broker. If for any reason you wish to contact: The Hartford, please write to us at: The Hartford, Hartford Plaza, COGS-1-34, Hartford, CT 06115, Attn: James R. Parker. The Illinois Department of Insurance Department can be reached at: Illinois Department of Insurance, Consumer Services Station, Springfield, Illinois 62767. This notice is furnished to you in accordance with Section 143c of the Illinois Insurance Code. **For Residents of Indiana:** IMPORTANT NOTICE: We are here to serve you. As our policyholder, your satisfaction is very important to us. Should you have a valid claim, we fully expect to provide a fair settlement in a timely fashion. If for any reason you wish to contact: The Hartford, please write to us at: The Hartford, Hartford Plaza, COGS-1-34, Hartford, CT, 06115, Attn: James E. Parker. The Indiana Department of Insurance please write to: Public Information/Market Conduct, Indiana Department of Insurance, 311 W. Washington St., Suite 300, Indianapolis, IN 46204-2787  Consumer Hotline: 1-800-622-4461  In the Indianapolis Area: 1-317-232-2395. **For Residents of North Carolina:** THIS CERTIFICATE OF INSURANCE PROVIDES COVERAGE UNDER A GROUP MASTER POLICY ISSUED OUT-OF-STATE. THIS CERTIFICATE PROVIDES ALL OF THE BENEFITS MANDATED BY THE NORTH CAROLINA INSURANCE CODE, BUT YOU MAY NOT RECEIVE ALL OF THE PROTECTIONS PROVIDED BY A POLICY ISSUED IN NORTH CAROLINA AND GOVERNED BY ALL OF THE LAWS OF NORTH CAROLINA. **For Residents of Texas:** IMPORTANT NOTICE - You may call The Hartford's toll-free telephone number for information or to make a complaint at: 1-800-428-5711. You may also write to The Hartford at: P.O. Box 2999, Hartford, CT 06104-2999. You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: 1-800-252-3439. You may write the Texas Department of Insurance at: P.O. Box 149104, Austin, TX 78714-9104  FAX # (512) 475-1771. PREMIUM OR CLAIM DISPUTES: Should you have a dispute concerning your premium or about a claim you should contact the agent or The Hartford first. If the dispute is not resolved, you may contact the Texas Department of Insurance. This notice is for information only and does not become a part or condition of this document. AVISO IMPORTANTE: Para obtener informacion o para someter una queja: Usted puede llamar al numero de telefono gratis de The Hartford para informacion o para someter una queja at: 1-800-428-5711. Usted tambien puede escribir a The Hartford:   P.O. Box 2999,   Hartford, CT 06104-2999. Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: 1-800-252-3439. Puede escribir al Departamento de Seguros de Texas: P.O. Box 149104, Austin, TX 78714-9104. FAX # (512) 475-1771. DISPUTAS SOBRE PRIMAS O RECLAMOS: Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o The Hartford primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). Este aviso es solo para proposito de informacion y no se convierte en parte o condicion este documento. **For Residents of Wisconsin:** KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS. PROBLEMS WITH YOUR INSURANCE? - If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem. Hartford Life Insurance Companies, Group Benefits Division Policyholder Services, P.O. Box 2999, Hartford, CT 06104-2999. Telephone: (860) 843-8623. You can also contact the OFFICE OF THE COMMISSIONER OF INSURANCE, a state agency which enforces Wisconsin's insurance laws, and file a complaint. You can contact the OFFICE OF THE COMMISSIONER OF INSURANCE by writing to: Office of the Commissioner of Insurance Complaints Department, P.O. Box 7873, Madison, WI 53707-7873  1-800-236-8517  1-608-266-0103 or you can call 1-800-236-8517 outside of Madison, or 266-0103 in Madison, and request a complaint form. **For residents of North Carolina:** UNDER NORTH CAROLINA GENERAL STATUTE SECTION 58-50-40, NO PERSON, EMPLOYER, FINANCIAL AGENT, TRUSTEE, OR THIRD PARTY ADMINISTRATOR, WHO IS RESPONSIBLE FOR THE PAYMENT OF GROUP HEALTH OR LIFE INSURANCE OR HEALTH CARE PLAN PREMIUMS, SHALL: 1) CAUSE THE CANCELLATION OR NONRENEWAL OF GROUP HEALTH OR LIFE INSURANCE, HOSPITAL, MEDICAL, OR DENTAL SERVICE PLAN, MULTIPLE EMPLOYER WELFARE ARRANGEMENT, OR HEALTH CARE PLAN COVERAGES AND THE CONSEQUENTIAL LOSS OF THE COVERAGES OF THE PERSON INSURED, BY WILLFULLY FAILING TO PAY SUCH PREMIUMS IN ACCORDANCE WITH THE TERMS OF THE INSURANCE OR PLAN CONTRACT; AND 2) WILLFULLY FAIL TO DELIVER, AT LEAST 45 DAYS PRIOR TO THE TERMINATION OF SUCH COVERAGES, TO ALL PERSONS COVERED BY THE GROUP POLICY WRITTEN NOTICE OF THE PERSON'S INTENTION TO STOP PAYMENT OF PREMIUMS. THIS WRITTEN NOTICE MUST ALSO CONTAIN A NOTICE TO ALL PERSONS COVERED BY THE GROUP POLICY OF THEIR RIGHTS TO HEALTH INSURANCE CONVERSION POLICIES UNDER ARTICLE 53 OF THE GENERAL STATUTES CHAPTER 58 AND THEIR RIGHTS UNDER THE FEDERAL CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT (COBRA). VIOLATION OF THIS LAW IS A FELONY. ANYPERSON VIOLATING THIS LAW IS ALSO SUBJECT TO COURT ORDER REQUIRING THE PERSON TO COMPENSATE PERSONS INSURED FOR EXPENSES OR LOSSES INCURRED AS A RESULT OF THE TERMINATION OF THE INSURANCE. **For residents of Washington:** IMPORTANT NOTICE REGARDING REPLACEMENT OF INSURANCE: (Save this notice! It may be important to you in the future.) The decision to buy a new life insurance policy or annuity and discontinue or change an existing one is very important. Your decision could be a good one--or a mistake. It should be carefully considered. The Washington State Insurance Commissioner requires us to give you this notice to help you make a wise decision. CAUTION: The insurance commissioner suggests you consider these points: (1) Usually, contestable and suicide periods start again under a new policy. Benefits might be excluded under the new policy that would be paid under existing insurance. (2) Terminating or altering existing coverage, before new insurance has been issued, might leave you unable to purchase other life insurance or let you buy it only at substantially higher rates. (3) You are entitled to advice from the existing agent or company. Such advice might be helpful. THIS COMPLETED FORM SHOULD BE FILED PERMANENTLY WITH YOUR NEW INSURANCE POLICY.          PA-9141 - 13737

PA-3057 (LIF) (HLA) (1705) - 13736



**AMENDATORY CERTIFICATE RIDER**

This rider forms a part of Policy Number AGL-1705 issued to **Trustee of the Hartford Financial and Retail Organizations Trust** and all certificates furnished to residents of certain states, as described below, in connection with the Policy.  It does not vary, waive, alter or extend any of the terms, conditions, or provisions of the Policy except as stated herein.

This rider is effective on the effective date of the certificate to which this rider is attached.

With respect to residents of:

**Maine,** the certificate is amended as follows:

The **Termination Section** of the **DEPENDENTS PERIOD OF COVERAGE** provision is deleted in its entirety and replaced by the following:

Termination:  Coverage of a Covered Dependent terminates on the earliest to occur of:
    a) the date this policy is canceled; or
    b) the Premium Due Date on or next following the date he or she:
        1. in the case of a Covered Spouse, is legally separated or divorced from the Insured Person;
        2. in the case of a Covered Child, no longer qualifies as an Eligible Child as defined in the Schedule;
        3. attains the Policy Age Limit shown in the Schedule; or
    c) the Premium Due Date he or she fails to pay any required premium contribution, subject to the Grace Period provision; or
    d) the date the Insured Person's coverage terminates.
Form PA-8096

**Minnesota,** the certificate is amended as follows:

The **CONVERSION PRIVILEGE** is deleted in its entirety and replaced by the following:

Conversion Privilege:  If a Covered Person who is insured under the Voluntary Plan of the Policy ceases to be insured under the Policy for any reason except voluntary non-payment of premium; the Covered Person will have the right to request an individual conversion policy from the Insurer without giving medical evidence of insurability.  Insurer, as used on this page, means us or another insurance company which has agreed with us to issue conversion policies according to this conversion privilege.

The Covered Person must:
    a) give the Insurer a written application for the conversion policy; and
    b) pay the Insurer the initial premium;
within 31 days after he or she ceases to be covered under this Policy.

The Conversion Policy:
    a) will have the provisions, limitations and exclusions on the form the Insurer is issuing for this purpose at the time of conversion;
    b) will not provide any benefit other than the Life Insurance Benefit;
    c) will not exceed the Covered Person's Life Insurance Benefit under this Policy;
    d) will base premiums on the Insurer's rates in effect for new applicants of the Covered Person's class and age at the time of conversion;
    e) will not be term insurance unless the Covered Person requests a single premium term insurance policy for a period of 1 year preceding the issuance of the conversion policy.
Any individual policy issued to the Covered Person under the Conversion Privilege becomes effective 3l days from the date of termination and will be in lieu of all other benefits under this Policy.

If:
    a) coverage under this Policy terminates; and
    b) the Covered Person dies within 3l days of the termination;
we will pay the Life Insurance Benefit the Covered Person would have had the right to apply for under this Conversion Privilege.  If the Conversion Policy has already taken effect, no Life Insurance Benefit will be payable under this Policy.
Form PA-9184 (LIF) (MN)

**AMENDATORY CERTIFICATE RIDER (CONTINUED)**

**Montana**, the certificate is amended as follows:

The following provision in the **CONVERSION PRIVILEGE** section is deleted:

If the Covered Person ceases to be covered under the Policy because of:
  a)  termination of the Policy; or
  b)  termination of a class of persons under the Policy;
then, provided that the Covered Person has been insured under the plan for five years or more, he or she has the same conversion privilege as shown above except for the amount for which he or she may convert.

It is replaced by the following provision:

If the Covered Person ceases to be covered under the Policy because of:
  a)  termination of the Policy; or
  b)  ) termination of a class of persons under the Policy;
then, provided that the Covered Person has been insured under the plan for five years or more, he or she has the same conversion privilege as shown above except for the amount for which he or she may convert.

The **Beneficiary Designation** provision in the **GENERAL PROVISIONS** section is amended to include the following:

We will pay claims within 60 days of proof of death of the Insured Person.

If payment is made after the first 30 days:
  a)  interest must be paid from the 30th day until the date the claim is paid; and
  b)  interest must be computed at the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank in the Ninth Federal Reserve District at the time of proof of death.
Form PA-3057 (LIF) (MT)-1


**New Hampshire**, the certificate is amended as follows:

The following is added to the **CONVERSION PRIVILEGE:**

1.  If you or your Covered Dependent cease to be covered under the Policy because of:
  a)  termination of the Policy; or
  b)  termination of a class of persons under the Policy;
then, provided that you or your Covered Dependent have been insured under the plan for five years or more, we will send a written notice of Conversion Privilege within 15 days.  If we fail to send it within that time, you or your Covered Dependent will have an additional 15 days after the date of the notice before the Conversion Privilege expires.

2.  The **Smoker's Statement** of the **GENERAL PROVISIONS** section has been deleted in its entirety and replaced by the following:

   Smoker's Statement:  Subject to the Incontestability provision, if you or your Covered Dependent misstates you or his or her status as a non-smoker, an adjustment in premium will be made to reflect a smoker's rate.  If such status has been misstated and you or your Covered Dependent die, the Life Insurance Benefit will be reduced to the amount of insurance which the premium would have purchased had the smoker status been correctly stated.

3.  The following have been added to the **GENERAL PROVISIONS** section:

**All Other Misstatements:** All other misstatements made by you or the Policyholder will be deemed representations and not warranties.  No statement will be used to void insurance or deny a claim unless:
  a)  it is in writing; and
  b)  a copy of it has been given to you or your beneficiary.


**North Dakota**, the certificate is amended as follows:

The first paragraph of the **Suicide** provision of the **LIFE INSURANCE BENEFIT** is deleted in its entirety and replaced by the following:

   **Suicide:**  If you or your Covered Dependent commit suicide, while sane or insane, during the first year of coverage under the Policy, no benefit will be paid.
Form PA-3057 (ND)


PA-3057 (LIF) (HLA) (1705) - 13736

**AMENDATORY CERTIFICATE RIDER (CONTINUED)**

**Texas,** the certificate is amended as follows:

The following is added to the first paragraph of the **CONVERSION PRIVILEGE:**

If a Covered Dependent ceases to be insured under the Policy due to your death, he or she will have the same right to request an individual conversion policy as described above.

The **Facility of Payment** section of the **GENERAL PROVISIONS** is deleted and replaced by the following:

**Facility of Payment:** At our option, we may pay a portion of your Life Insurance Benefit up to $250 to any person equitably entitled to payment because of expenses from your burial.  Our payment will release us from any further liability to the extent of such expenses.

Form PA-7083

**Vermont,** the certificate is amended as follows:

**VERMONT LIFE INSURANCE
MANDATORY CIVIL UNION ENDORSEMENT**

<u>PURPOSE:</u>

This endorsement is part of the policy, contract, certificate and/or riders and endorsements to which it is attached and is intended to provide benefits for parties to a civil union.  Vermont law requires that insurance contracts and policies offered to married persons and their families be made available to parties to a civil union and their families.  In order to receive benefits in accordance with this endorsement, the civil union must have been established in the state of Vermont according to Vermont law.

<u>GENERAL DEFINITIONS, TERMS, CONDITIONS AND PROVISIONS:</u>

The general definitions, terms, conditions or any other provisions of the policy, contract, certificate and/or riders and endorsements to which this mandatory endorsement is attached are hereby amended and superseded as follows:

Terms that mean or refer to a marital relationship or that may be construed to mean or refer to a marital relationship: such as "marriage", "spouse", "husband", "wife", "dependent", "next of kin", "relative", "beneficiary", "survivor", "immediate family" and any other such terms include the relationship created by a civil union.

Terms that mean or refer to a family relationship arising from a marriage such as "family", "immediate family", "dependent", "children", "next of kin", "relative", "beneficiary", "survivor" and any other such terms include the family relationship created by a civil union.

Terms that mean or refer to the inception or dissolution of a marriage, such as "date of marriage", "divorce decree", "termination of marriage" and any other such terms include the inception or dissolution of a civil union.

"Dependent" means a spouse, a party to a civil union, and/or a child or children (natural, stepchild, legally adopted or a minor who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union.

"Child or covered child" means a child (natural, step-child, legally adopted or a minor who is dependent on the insured for support and maintenance) who is born to or brought to a marriage or to a civil union.

<u>CAUTIONARY DISCLOSURE:</u>

**THIS ENDORSEMENT IS ISSUED TO MEET THE REQUIREMENTS OF VERMONT LAW AS EXPLAINED IN THE "PURPOSE" PARAGRAPH OF THE ENDORSEMENT. THE FEDERAL GOVERNMENT OR ANOTHER STATE GOVERNMENT MAY NOT RECOGNIZE THE BENEFITS GRANTED UNDER THIS ENDORSEMENT. YOU ARE ADVISED TO SEEK EXPERT ADVICE TO DETERMINE YOUR RIGHTS UNDER THIS CONTRACT.**

Form PA-9127

In all other respects, the certificates remain the same.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
Simsbury, Connecticut

**Richard G. Costello,** *Secretary*             **Thomas M. Marra,** *President*

PA-3057 (LIF) (HLA) (1705) - 13736



**TRANSITION RIDER**

This rider forms a part of Policy Number **AGL-1705** issued to the **Trustee of the Hartford Financial and Retail Organizations Trust** and certain certificates furnished in connection with the Policy.

This rider becomes effective on the Policy Effective Date and applies only to Eligible Persons who were previously insured under the Prior Policy.

The Policy and all certificates to which this rider is attached are hereby amended by the addition of the following provisions:

<strong>TRANSITION PROVISION</strong>

We will automatically cover each Prior Insured Person under This Policy on March 1, 2005, in accordance with the provisions of this rider and subject to payment of the required premium and all the provisions and conditions of This Policy.

Each Prior Insured Person will be covered for the same Benefit Amount, or the one which most closely approximates the amounts for which he or she was covered under the Prior Policy on February 28, 2005.

However, Evidence of Insurability will be required for any Amount of Insurance under This Policy that exceeds the Prior Insured Person's Amount of Insurance under the Prior Policy in effect on February 28, 2005.

The amount of time the Prior Insured Person was covered under the Prior Policy will be credited toward the satisfaction of time limits under the Suicide and Incontestability provisions of This Policy.

The Beneficiary Designation under the Prior Policy in effect on February 28, 2005 will be considered to be the Beneficiary Designation under This Policy, subject to:
    a)    the Beneficiary Designation provision; and
    b)    the Change in Beneficiary Designation provision;
of This Policy.

This Policy will not pay any benefits for a claim in effect before the effective date of This Policy.

"This Policy" means Policy Number AGL-1705 issued to the Trustee of the Hartford Financial and Retail Oraganizations Trust by Hartford Life And Accident Insurance Company.

"Prior Policy" means Policy Number P104-1855 (TX) issued to Financial Services Trust, Bank of America of Texas, N.A. by Provident Life and Accident Insurance Company; or Policy Number P104-1855 (TN) issued to Financial Services Trust, Bank of America of Tennessee, N.A. by Provident Life and Accident Insurance Company.

"Prior Insured Person" means a person who, on February 28, 2005 was a Cover Person under the Prior Policy.

In all other respects, the Policy and certificates remain the same.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**
Simsbury, Connecticut

Richard G. Costello, *Secretary*        Thomas M. Marra, *President*

Form PA-8794 (HLA) (1705)
Printed in U.S.A.

# Certificate of Insurance

**Banc of America Insurance Services, Inc. (Agent)**

| | |
|---|---|
| **Member Identifiers** | **Insurance Carrier** |
| ID Number ▮▮▮STYG | Provident Life and Accident Insurance Company |
| Certificate Number ▮▮3921 | Group Policy Number: ▮▮▮1855 |
| Part Org.: Bank of America, N.A. | Policyholder: First Tennessee Bank, Trustee of the Financial |
| **Member Name and Address** | Services Trust |

Henry Thompson
▮▮▮▮▮▮▮▮▮▮▮▮

**Program Administrator**
PAS Financial Group, Inc.
P.O. Box 41166
Nashville, TN 37204-1166
(800) 386-5937

**Plan of Insurance**
LifeStyle
Beneficiary - As on file

## SCHEDULE FOR CURRENT COVERAGE

| | Effective Date | Coverage Type | Amount of Coverage | Monthly Premium |
|---|---|---|---|---|
| **PRIMARY MEMBER** | | | See Basic Term | |
| BASIC AMOUNT (Non-Contributory) | 12/01/2000 | Individual | Coverage | N/A |
| ADDITIONAL AMOUNT (Contributory) | 12/01/2000 | Individual | $100,000 | $17.00 |
| **SPOUSE** | | | | |
| ADDITIONAL AMOUNT (Contributory): | | | N/A | |

This insurance takes effect 12:01 A.M. Standard Time on the effective date shown on the certificate.

## LEVEL TERM LIFE INSURANCE SCHEDULE OF BENEFITS

Insurance benefits are determined by this Schedule of Benefits and the terms of the Group Policy.

**MEMBER AND SPOUSE COVERAGE**
An amount of insurance as selected by you or your spouse from $10,000 to a maximum of $100,000 in increments of $10,000.
All insurance benefits for the Member and Spouse terminate when the Member attains age 75.

### MONTHLY RATES PER $10,000 COVERAGE

| | NON-SMOKER | | SMOKER | |
|---|---|---|---|---|
| **MEMBER'S AGE** | **MALE** | **FEMALE** | **MALE** | **FEMALE** |
| 18-29 | $1.40 | $.95 | $1.95 | $1.20 |
| 30-34 | 1.70 | 1.20 | 2.45 | 1.80 |
| 35-39 | 1.90 | 1.50 | 3.10 | 2.25 |
| 40-44 | 2.55 | 2.35 | 4.50 | 4.15 |
| 45-49 | 4.15 | 3.30 | 8.25 | 6.20 |
| 50-54 | 6.35 | 4.20 | 12.20 | 8.60 |
| 55-59 | 9.85 | 5.65 | 19.70 | 10.70 |
| 60-64 | 13.95 | 8.45 | 29.05 | 15.00 |
| 65-69 | 25.30 | 12.20 | 41.25 | 20.65 |
| 70-74* | 35.65 | 16.90 | 54.00 | 26.25 |

Premiums are based on the Member's or Spouse's Entry Age and will increase when the Member or Spouse enter each age bracket as shown above.    *For renewal only.

## BASIC TERM COVERAGE

**PRIMARY MEMBER ONLY**

| MEMBER'S AGE | MAXIMUM BENEFIT | MONTHLY PREMIUM |
|---|---|---|
| 18-64 | $1,000 | No Cost to Member |
| 65-69 | $ 750 | No Cost to Member |
| 70* | $ 500 | No Cost to Member |

The Basic Term Coverage shown in the Schedule above is provided by your Financial Institution, or its authorized agent, for one year only. There is no cost to you. This coverage will terminate at the end of one year from the date it became effective. Your amount of coverage will be the amount shown above for your attained age on the date of death.
*Applicable only to Members who enroll for the Basic Benefit after attainment of age 69, but prior to attainment of age 70. The coverage for any such Member will terminate at the end of one year from the date it became effective.

Print Date: 11/16/00

*Yae h 72035*

**PROOF OF DEATH**

**ASSOCIATION LIFE INSURANCE**



**THE HARTFORD**

HARTFORD FIRE INSURANCE COMPANY
HARTFORD LIFE INSURANCE COMPANY
HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

In furnishing this form, THE COMPANY does not waive any of its rights nor admit liability.

**INSTRUCTIONS:** This form is to be completed by the Association and beneficiary and submitted with official death certificate bearing the raised seal or other Certifying device of the governmental agency issuing the Certificate. The form, death certificate, and policy should be mailed to: The Hartford, P.O. Box 2999, Hartford, CT 06104-2999. If you have a question on the claim, or would like to appeal the decision, please contact our Customer Service Unit at 1-888-563-1124.

**NOTE:** In lieu of the official death certificate, the attending physician should complete the Physician's Statement on the reverse side of this form

---

**ADMINISTRATOR'S STATEMENT**

Name of Association: **Bank of America**    Policy Number: ███ -1705

Name of Insured: **Henry Thompson**    Social Security No. of Insured: ███ 909A    Occupation or Profession:

Address of Insured: ███████████    Temple Hills, MD    Plan of Insurance: **Term**

Effective Date of Member's Insurance: **Eff 12-1-00    PTD 9-1-05**    Amount of Insurance in Force at Death: **$100,000**

If claim is being filed for an eligible dependent, give date dependent's insurance effective

Date: **8-4-05**    Signed for Association by: *[signature]*

---

**CLAIMANT'S STATEMENT**

| Name of Employer | | Policy Number |
|---|---|---|

| Name of Insured | | Address of Insured |
|---|---|---|

| Date of Birth | Occupation | Date Last Worked | Date of Death |
|---|---|---|---|

| Reason Ceased Work | Place of Death | Cause of Death |
|---|---|---|

| When did deceased first complain of last illness? | When did deceased first consult a physician for last illness? |
|---|---|

Names and addresses of all physicians who attended the deceased and of all hospitals and institutions where deceased was treated during the last illness and during five years prior thereto:

| NAME (Physicians, Hospital, Institutions) | ADDRESS | DATE | DISEASE OR CONDITION |
|---|---|---|---|

Insurance carried in all other companies by deceased:

| COMPANY | DATE OF ISSUE | AMOUNT |
|---|---|---|
| **N/A** | $ | |
| | $ | |
| | $ | |

In what capacity, or by what title do you claim this insurance (Beneficiary, Guardian, Administrator, Assignee, etc.)    Relationship: **Fiancé**

**Beneficiary**

Beneficiary/Estate/Trust Social Security No.: ███ 8536    Beneficiary/Estate/Trust Tax I.D. No.    Name of Beneficiary (Please print): **Mozella D. Jones**

Date: **8/29/05**    Signed by: **Mozella D. Jones**

Address: ███████████    **Oxon Hill, Md.** ███████

Form LC-4768-5 (Rev. 11/02)  Printed in U.S.A.    (-1)

**EXHIBIT C**
**1:05CV01986-HHK**

Please read the statement that applies to your residence and sign the bottom of the page.

For residents of all states *EXCEPT* California, Florida, New Jersey, Colorado, Pennsylvania, Arkansas, New Mexico, Louisiana, Oregon, and Virginia: A person commits a fraudulent insurance act if that person knowingly, and with intent to defraud any insurance company or other person, either: (a) files an application for insurance or statement of claim containing any materially false information, or (b) conceals information concerning any material fact in order to obtain an insurance policy or a benefit under an insurance policy. A fraudulent insurance act is a crime. The Hartford shall pursue prosecution of any fraudulent insurance act to the fullest extent of the law.

For residents of Florida: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

For residents of New Jersey, Arkansas, New Mexico, and Louisiana:  Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.  Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

For residents of Pennsylvania:  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects a person to criminal and civil penalties.

For residents of Colorado: It is unlawful to knowingly provide false, incomplete, or misleading information to an Insurance Company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or its agent who knowingly provides false, incomplete, or misleading information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to an insurance settlement or award  shall be reported to the Colorado Division of Insurance.

FOR RESIDENTS OF CALIFORNIA:  FOR YOUR PROTECTION, CALIFORNIA LAW REQUIRES THE FOLLOWING TO APPEAR ON THIS FORM: "ANY PERSON WHO KNOWINGLY PRESENTS  A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS  GUILTY OF A CRIME AND  MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON."

_Mozella D. Jones_                         _8/27/05_
Signature                                              Date

**Preference**
**Beneficiary's Affidavit**

| POLICY NUMBER | CERTIFICATE NUMBER | NAME OF DECEASED |
|---|---|---|
| ████-1855 | JONM 70969A | Henry Clay Thompson |

NOTE: This affidavit is to be used whenever no beneficiary was designated or no designated beneficiary survived the deceased. It is to be completed only by the person or one of the persons within the first surviving class of the following classes of successive preference beneficiaries of the deceased: (1) widow or widower; (2) children; (3) parents; (4) brothers or sisters; (5) executor or administrator.

The undersigned, for himself/herself, their heirs, executors, and assigns hereby agree to release and forever discharge the Company from any further liability under the above-referenced policies and further agrees to indemnify the Company and to hold harmless from any and all claims, costs, expenses and damages which may result from the Company's reliance on the representation made herein and payment in accordance therewith.

State or Province of _Maryland_ )

County of _Prince George's_ ) SS No. ███-██-8536

I, _Mozella D. Jones_, residing at ████████

_Oxon Hill_          _Md._ ████, being first duly sworn, depose and state:
(City or Town)        (State or Province)

| WIDOW OR WIDOWER | That I am the surviving spouse of the deceased person named above. The date of my birth is ██/██/65   Signed X _Mozella D. Jones_ |
|---|---|

| SON OR DAUGHTER | That the deceased person named above left no surviving spouse; that I am the child of the deceased; and that the deceased left no surviving children other than myself and those listed below: |
|---|---|

| Name | Address | SS # | Date of Birth |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

The date of my birth is ___/___/___   Signed X_____

| FATHER OR MOTHER | That the deceased person named above left no surviving spouse or child; that I am a biological parent of the deceased; and that the other biological parent, if surviving, is listed below: |
|---|---|

| Name | Address | SS # | Date of Birth |
|---|---|---|---|
| | | | |
| | | | |

The date of my birth is ___/___/___   Signed X_____

| BROTHER OR SISTER | That the deceased person named above left no surviving spouse, child or parent; that I am the brother/sister of the deceased; and that the deceased left no surviving brothers or sisters other than myself and those listed below: |
|---|---|

| Name | Address | SS # | Date of Birth |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

The date of my birth is ___/___/___   Signed X_____

| EXECUTOR OR ADMINISTRATOR | That the deceased person named above left no surviving spouse, child, parent, brother or sister, that I am the executor or administrator of the estate of the deceased. Signed X_____ |
|---|---|

Subscribed and sworn to before me this _22th_ day of _August_ _2005_

(SEAL)   _James E. Osborn_

Notary Public or other official authorized to administer oaths

My commission or term expires _11/08/05_

**PREFERENCE BENEFICIARY AFFIDAVIT**

*IMPORTANT: PLEASE REFER TO*
*THE REVERSE SIDE OF THIS FORM*

THE HARTFORD

Name of Deceased: _Henry C. Thompson_

Claim Number: 4HE A033

Policy Number: 441 105

**NOTE:** This affidavit is to be used whenever no beneficiary was designated, or no designated beneficiary survived the deceased. It is to be completed only by the person or persons within the first surviving class of the following classes of successive preference beneficiaries of the deceased: 1) widow or widower; 2) children; 3) parents; 4) brothers or sisters, 5) executors or administrators. FOR THE PURPOSE OF inducing The Hartford to recognize the person(s) named herein as the preference beneficiary(ies) entitled to payment, the undersigned does answer as follows and agrees to reimburse The Hartford for any improper payment which is made based upon the information contained in this affidavit.

State or Province of _Virginia_    County of _Danville_

I, _Vivian Thompson_, residing at _____, _Amelia Va_ being first duly sworn, depose and state:

**WIDOW OR WIDOWER:** That I am the surviving spouse of the deceased person named above.
My birth date is _N/A_
Social Security # _____

**SON OR DAUGHTER:** That the deceased person above left no surviving spouse; that I am a child of the deceased, and that the deceased left no surviving children other than myself and those listed below: (Use separate sheet, if necessary.)

| NAME | ADDRESS | DATE OF BIRTH | SOCIAL SECURITY NO. |
|---|---|---|---|
| _____ | Brooklyn, NY | 85 | 4582 |
| Derrel R Thompson | NY, NY | | |
| _____ | Alexandria VA | | |
| M___ R T___ | Silver Spring, Md | | |

SIGNED _Vivian Thompson, mother_   PHONE _____

**FATHER OR MOTHER:** That the deceased named above left no surviving spouse or child(ren); that I am a parent of the deceased; and that the other parent is listed below!

| NAME | ADDRESS | DATE OF BIRTH | SOCIAL SECURITY NO. |
|---|---|---|---|
| Vivian Thompson | | | |

SIGNED _____   PHONE _____

**BROTHER OR SISTER:** That the deceased named above left no surviving spouse or child(ren); that I am the brother/sister of the deceased; and that the deceased left no other surviving brothers or sisters other than myself and those listed below:

| NAME | ADDRESS | DATE OF BIRTH | SOCIAL SECURITY NO. |
|---|---|---|---|
| N/A | | | |

SIGNED _____   PHONE _____

**EXECUTOR OR ADMINISTRATOR:** That the deceased person named above left no surviving spouse, child, parent, brother or sister and that I am the executor or administrator of the estate of the deceased. _N/A_

SIGNED _____   PHONE _____
ADDRESS _____   TAX ID NUMBER _____

**NOTARIZATION:** Subscribed and sworn to before me this _11th_ day of _October_ 2005

Seal   My Commission Expires May 31, 2008

**EXHIBIT E**
1:05CV01986-HHK

10/27/2005  01:56PM